IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

DAVID HAROLD HAMMOND,

    Petitioner,

vs.               No. 1:12-1173-JDB-egb

HENRY STEWARD,

    Respondent.

---

ORDER DENYING MOTION FOR SUMMARY JUDGMENT,
(DOCKET ENTRY 11)
ORDER OF DISMISSAL,
DENYING CERTIFICATE OF APPEALABILITY,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH,
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

---

On August 2, 2012, Petitioner, David Harold Hammond, filed a *pro se* petition pursuant to 28 U.S.C. § 2254. (Docket Entry ("D.E.") 1.) On August 13, 2012, Hammond paid the filing fee. (D.E. 3.) On September 26, 2012, the Court directed the Respondent, Warden Henry Steward, to file the state-court record and a response to the petition. (D.E. 5.) On October 19, 2012, Respondent answered the petition and three days later, submitted the state-court record. (D.E. 9 & 10.)

On April 24, 2013, Steward moved for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure (D.E. 11) and sought a waiver of Local Rule 56.1(a). (D.E. 12.) On August 19, 2013, Petitioner filed a reply in opposition to the motion for summary

judgment, contending the motion was inappropriate and unnecessary. (D.E. 16.) Respondent's summary judgment motion is substantially similar to the portion of his answer titled "Argument." (*Compare* D.E. 9 at 6-21 *with* D.E. 11-1 at 5-17.) The motion does not adequately state why it is appropriate in this case, how the Court is to apply the summary judgment standard without a statement of undisputed facts, and how that standard differs from the review conducted by the Court under Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("§ 2254 Rules") upon receipt of the answer, reply, and state-court record. Because these procedural issues can be avoided by assessing Hammond's claims under Rule 8(a), Steward's motion for summary judgment is DENIED as unnecessary. The reply in opposition to the summary judgment motion will be construed as a reply to Respondent's answer.

I.   STATE COURT PROCEDURAL HISTORY

On September 3, 2002, a grand jury sitting in Madison County, Tennessee, indicted Hammond on one count of rape. (D.E. 10-1 at 5-6.)[1] On October 3, 2006, following a jury trial, Petitioner was convicted as charged. (D.E. 10-2 at 133.) Hammond was sentenced to twelve years in prison as a Range II multiple offender. (D.E. 10-1 at 42.) The Tennessee Court of Criminal Appeals affirmed Hammond's conviction and sentence. State v. Hammond, No. W2007-

---

[1]   Page citations are to the district court record docket entries.

00219-CCA-R3-CD, 2008 WL 465278 (Tenn. Crim. App. Feb. 21, 2008), *perm app. denied* (Tenn. Aug. 25, 2008).

On April 8, 2009, Hammond filed a *pro se* petition pursuant to the Tennessee Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101 to -122, in the Circuit Court for Madison County. (D.E. 10-12 at 4-35.) Counsel was appointed to represent him. (<u>Id.</u> at 49-50.) Following an evidentiary hearing, the post-conviction court issued an order on August 6, 2010 denying relief. (<u>Id.</u> at 62-63.) The Tennessee Court of Criminal Appeals affirmed. <u>Hammond v. State</u>, No. W2010-01716-CCA-R3-PC, 2012 WL 376490 (Tenn. Crim. App. Feb. 6, 2012), *perm. app. denied* (Tenn. May 16, 2012).

The facts underlying Petitioner's conviction are set forth in the opinion of the Tennessee Court of Criminal Appeals on direct appeal:

> According to the victim, Starlet Givens, she was raped by [David Hammond] in March of 2002. At trial, the victim testified that on March 29, 2002, she attended a party at her sister's apartment in Jackson, Tennessee. Sequoia Greer, the victim's sister, lived in the same apartment complex as the victim.
>
> The party started around 10:00 p.m. At some point that evening, [Hammond] showed up at the party. According to the victim, [Hammond] was not invited. The victim drank approximately seven shots of tequila during the party. The victim went into one of Ms. Greer's bedrooms to go to sleep around 1:30 a.m. She was accompanied to the bedroom by her friend, Ted Ingram. The victim testified that she slept in the bed, fully-clothed, with Mr. Ingram until approximately 2:45 a.m., when Mr. Ingram's "partner" woke him up to leave the party.

The victim testified that the next thing she remembered was waking up "when [she] felt [Hammond] coming out of me." According to the victim, the room was dark when she woke up. She felt someone having sex with her and turned on the lights to find [Hammond] in the room. The victim's pants and panties were pulled down to her ankles. The victim stated that she was menstruating at the time, and there was blood on the bed sheets. She saw [Hammond] getting dressed and noticed that he had blood on his pants. [Hammond] asked her to go to "dinner sometime." The victim did not scream out to anyone when she saw what [Hammond] was doing. She asked [Hammond], "What the 'F' just went on?" Then the victim pulled up her pants and left the bedroom. She then exited the apartment and went to her own apartment. Ms. Greer testified that the victim was "very upset and crying and screaming and stuff" when she left the apartment.

When the victim got to her own apartment, she douched and took a bath. The victim then called Ms. Greer to tell her what had happened. The victim went back to Ms. Greer's apartment, but [Hammond] was no longer there. The victim's friends drove around town, looking for [Hammond]. When they were unable to locate [Hammond], the victim drove to the police station to report the rape.

The victim was examined at the hospital for evidence of rape. There was no semen detected after a vaginal swab, but the DNA tests performed on the victim's underwear revealed the presence of [Hammond's] DNA "along the edge of the crotch area."

Michelle Lee, [Hammond's] sister, testified at trial on his behalf. According to Ms. Lee, she and [Hammond] were invited to the party by Anthony Hawkins, Ms. Lee's cousin. Ms. Lee did not drink any alcoholic beverages at the party. At some point, she overheard the victim say that "somebody is going to get fucked tonight." The victim denied making that statement.

Ms. Lee stated that [Hammond] fell asleep on the couch and slept there until around 2:45 a.m., when he got up from the couch. At that point, Ms. Lee saw [Hammond] go into the bedroom where the victim was sleeping. [Hammond] was going into the room to "get his coat." About five to ten minutes later, Ms. Lee saw the victim leave the bedroom. Contrary to Ms. Greer's testimony,

Ms. Lee claimed that the victim did not appear upset when she left the bedroom or the apartment. Ms. Lee did not see any blood on [Hammond's] pants when he left the bedroom. After leaving the bedroom, [Hammond] and Ms. Lee went to the kitchen and made a sandwich. The two then left the apartment at approximately 3:30 a.m.

At the conclusion of the proof, the jury found Hammond guilty of rape as charged in the indictment. At a sentencing hearing, the trial court sentenced [Hammond] as a Range II, multiple offender to a twelve-year sentence. The trial court ordered the sentence to be served consecutively to [Hammond's] sentences in "Madison County Case # 92-791 and Gibson County Case # 15622."

State v. Hammond, 2008 WL 465278, at *1-2.

II. PETITIONER'S FEDERAL HABEAS CLAIMS

In this § 2254 petition, Petitioner contends that:

1) the evidence was insufficient to support the rape conviction (D.E. 1 at 5); and

2) counsel provided ineffective assistance by failing

A) to challenge the sufficiency of the State's proof of force or coercion (id. at 7);

B) failing to hire a DNA analysis expert (id. at 8); and

C) failing to stand on his motion for judgment of acquittal (id. at 10).

Hammmond challenged the sufficiency of the evidence to support the rape conviction on direct appeal. State v. Hammond, 2008 WL 465278, at *2-3. He raised the issues of ineffective assistance during the post-conviction proceedings. State v. Hammond, 2012 WL 376490, at *2-5. Petitioner has clarified in the reply that he has

5

not raised any issue about a variance in the indictment nor the "sub-claims"[2] set forth by Respondent.  (D.E. 16 at 9.)

III. <u>LEGAL STANDARDS</u>

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

A.  <u>Exhaustion and Procedural Default</u>

Twenty-eight U.S.C. §§ 2254(b) and (c) provide that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts.  <u>Cullen v. Pinholster</u>, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011), *reh'g denied*, ___ U.S. ___, 131 S. Ct. 2951, 180 L. Ed. 2d 239 (May 31, 2011).  The petitioner must "fairly present"[3] each claim to all levels of state court review,

_____

[2]       *See* D.E. 9 at 2-3.

[3]       For a claim to be exhausted, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."  <u>Anderson v. Harless</u>, 459 U.S. 4, 6, 103 S. Ct. 276, 277, 74 L. Ed.2d 3 (1982) (per curiam) (internal citation omitted).  Nor is it enough to make a general appeal to a broad constitutional guarantee.  <u>Gray v. Netherland</u>, 518 U.S. 152, 163, 116 S. Ct. 2074, 2081, 135 L.
(continued...)

up to and including the state's highest court on discretionary review, Baldwin v. Reese, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349, 158 L. Ed. 2d 64 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy. O'Sullivan v. Boerckel, 526 U.S. 838, 847-48, 119 S. Ct. 1728, 1733-34, 144 L. Ed. 2d 1 (1999). Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court to "be deemed to have exhausted all available state remedies." Adams v. Holland, 330 F.3d 398, 402 (6th Cir. 2003), *cert. denied*, 541 U.S. 956, 124 S. Ct. 1654, 158 L. Ed. 2d 392 (2004); *see also* Smith v. Morgan, 371 F. App'x 575, 579 (6th Cir. 2010) (the Adams holding promotes comity by requiring that state courts have the first opportunity to review and evaluate claims and by mandating that federal courts respect the duly promulgated rule of the Tennessee Supreme Court that recognizes the court's law and policy-making function and the court's desire not to be entangled in the business of simple error correction).

The procedural default doctrine is ancillary to the exhaustion requirement. *See* Edwards v. Carpenter, 529 U.S. 446, 452-53, 120 S. Ct. 1587, 1592, 146 L. Ed. 2d 518 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate

---

[3]    (...continued)
Ed. 2d 457 (1996), *reh'g denied*, 518 U.S. 1047, 117 S. Ct. 22, 135 L. Ed. 2d 1116 (Aug. 27, 1996).

state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81-82, 97 S. Ct. 2497, 2503-04, 53 L. Ed. 2d 594 (1977), *reh'g denied*, 434 U.S. 880, 98 S. Ct. 241, 54 L. Ed. 2d 163 (Oct. 3, 1977); *see also* Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553, 115 L. Ed. 2d 640 (1991)(a federal habeas court will not review a claim rejected by a state court "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment"), *reh'g denied*, 501 U.S. 1277, 112 S. Ct. 27, 115 L. Ed. 2d 1109 (Sept. 13, 1991). If a claim has never been presented to the state courts, but a state court remedy is no longer available (*e.g.*, when an applicable statute of limitations bars a claim), the claim is technically exhausted, but procedurally barred. Coleman, 501 U.S. at 731-32, 111 S. Ct. at 2555.

Under either scenario, a petitioner must show cause to excuse his failure to present the claim fairly and actual prejudice stemming from the constitutional violation or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298, 320-21, 115 S. Ct. 851, 864, 130 L. Ed. 2d 808 (1995); Coleman, 501 U.S. at 750, 111 S. Ct. at 2565. The latter showing requires a petitioner to establish that a constitutional error has probably resulted in

the conviction of a person who is actually innocent of the crime.

Schlup, 513 U.S. at 321, 115 S. Ct. at 864; *see also* House v. Bell, 547 U.S. 518, 536-539, 126 S. Ct. 2064, 2076-78, 165 L. Ed. 2d 1 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).

B.   Merits Review

Section 2254(d) establishes the standard for addressing claims that have been adjudicated in state courts on the merits:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The petitioner carries the burden of proof for this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt." Cullen, ___ U.S. at ___, 131 S. Ct. at 1398 (internal quotation marks and citations omitted).[4]

---

[4]   The AEDPA standard creates "a substantially higher threshold" for obtaining relief than a *de novo* review of whether the state court's determination was incorrect. Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939, 167 L. Ed. 2d 836 (2007), *reh'g denied*, 551 U.S. 1177, 128 S. Ct. 7, 168 L. Ed. 2d 784 (July 30, 2007).

Review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. <u>Cullen</u>, ___ U.S. at ___, 131 S. Ct. at 1399. A state court's decision is "contrary to" federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000).[5] An "unreasonable application" of federal law occurs when the state court "identifies the correct governing legal principle from" the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> The state court's application of clearly established federal law must be "objectively unreasonable." <u>Id.</u> at 409, 120 S. Ct. at 1521. The writ may not issue merely because the habeas court, in its independent judgment, determines that the state court decision applied clearly established federal law erroneously or incorrectly. <u>Renico v. Lett</u>, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010); <u>Williams</u>, 529 U.S. at 411, 120 S. Ct. at 1522.

---

[5] The "contrary to" standard does not require citation of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (per curiam), *reh'g denied*, 537 U.S. 1148, 123 S. Ct. 955, 154 L. Ed. 2d 854 (Jan. 13, 2003); *see also* <u>Mitchell v. Esparza</u>, 540 U.S. 12, 16, 124 S. Ct. 7, 10, 157 L. Ed. 2d 263 (2003) (same), *reh'g denied*, 540 U.S. 1142, 124 S. Ct. 1124, 157 L. Ed. 2d 956 (Jan. 12, 2004); <u>Treesh v. Bagley</u>, 612 F.3d 424, 429 (6th Cir. 2010) (same), *cert. denied*, ___ U.S. ___, 131 S. Ct. 1678, 179 L. Ed. 2d 622 (Mar. 21, 2011).

There is little case law addressing the standard in §
2254(d)(2) that a decision was based on "an unreasonable
determination of facts." However, in <u>Wood v. Allen</u>, 558 U.S. 290,
301, 130 S. Ct. 841, 849, 175 L. Ed. 2d 738 (2010), *reh'g denied*,
559 U.S. 1032, 130 S. Ct. 1942, 176 L. Ed. 2d 405 (Mar. 22, 2010),
the Supreme Court stated that a state-court factual determination
is not "unreasonable" merely because the federal habeas court would
have reached a different conclusion. In <u>Rice v. Collins</u>, 546 U.S.
333, 341-42, 126 S. Ct. 969, 976, 163 L. Ed. 2d 824 (2006), the
Court explained that "[r]easonable minds reviewing the record might
disagree" about the factual finding in question, "but on habeas
review that does not suffice to supersede the trial court's . . .
determination."[6]

"Notwithstanding the presumption of correctness, the Supreme
Court has explained that the standard of § 2254(d)(2) is 'demanding
but not insatiable.'" <u>Harris v. Haeberlin</u>, 526 F.3d 903, 910 (6th
Cir. 2008) (quoting <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240, 125 S.
Ct. 2317, 2325, 162 L. Ed. 2d 196 (2005), *reh'g and reh'g en banc
denied* (Aug. 14, 2008)). "Even in the context of federal habeas,

---

[6] In <u>Wood</u>, 558 U.S. at 299, 130 S. Ct. at 848, the United States
Supreme Court granted certiorari to resolve "whether, in order to satisfy §
2254(d)(2), a petitioner must establish only that the state-court factual
determination on which the decision was based was 'unreasonable,' or whether §
2254(e)(1) additionally requires a petitioner to rebut a presumption that the
determination was correct with clear and convincing evidence." The Court
ultimately found it unnecessary to reach that issue. <u>Id.</u> at 310, 130 S. Ct. at
849. In <u>Rice</u>, 546 U.S. at 339, 126 S. Ct. at 974, the Court recognized that it
is unsettled whether there are some factual disputes to which § 2254(e)(1) is
inapplicable.

deference does not imply abandonment or abdication of judicial review." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003). A state-court adjudication will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding. Ayers v. Hudson, 623 F.3d 301, 308 (6th Cir. 2010), reh'g and reh'g en banc denied (Dec. 28, 2010); see also Hudson v. Lafler, 421 F. App'x 619, 624 (6th Cir. 2011) (same), cert. denied, ___ U.S. ___, 132 S. Ct. 524, 181 L. Ed. 2d 368 (2012).

IV. ANALYSIS OF PETITIONER'S CLAIMS

Issue One

Sufficiency of the Evidence

Hammond contends that the evidence was insufficient to establish his guilt because the State failed to prove every element of the offense of rape. (D.E. 1-1 at 4-11.) The State responds that the state court's resolution of this claim was not contrary to or an unreasonable application of clearly established federal law. (D.E. 9 at 9.) The Tennessee Court of Criminal Appeals rejected this issue on the merits, stating:

> When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty

12

removes this presumption "and replaces it with one of guilt." <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. <u>Id.</u> The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); <u>Harris</u>, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See* <u>Tuggle</u>, 639 S.W.2d at 914. As such, this Court is precluded from reweighing or reconsidering the evidence when evaluating the convicting proof. <u>State v. Morgan</u>, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." <u>Matthews</u>, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. <u>State v. Odom</u>, 928 S.W.2d 18, 23 (Tenn. 1996).

In pertinent part, rape is defined as:

[U]nlawful sexual penetration of a victim by the defendant or of the defendant accompanied by any of the following circumstances:

(1) Force or coercion is used to accomplish the act;

(2) The sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent; . . . .

Tenn. Code Ann. § 39-13-503.

Viewing the evidence at trial in a light most favorable to the State, the evidence showed that [Hammond] entered the bedroom where the victim was sleeping alone. The victim testified that she awoke with her clothes around her ankles. She felt [Hammond] penetrating and then "coming out of her." When the victim turned on the light, she saw [Hammond] putting on his clothes. [Hammond's] semen was found on the victim's panties and

there was blood on the bed where the victim was lying.
The victim also saw blood on [Hammond's] pants.
According to at least one witness, the victim left the
apartment in an upset manner. Although [Hammond's]
sister testified that the victim did not look upset when
she left the bedroom, the task of weighing the evidence
at trial belongs to the jury. Apparently, the jury in
this case chose to accredit the State's witnesses,
including the victim. There was ample evidence for a
rational jury to conclude that [Hammond] sexually
penetrated the victim while she was either passed out or
in a heavy sleep and therefore she did not consent to the
penetration. [Hammond] is not entitled to relief on this
issue.

State v. Hammond, 2008 WL 465278, at *2-3.

In Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781,

2791-92, 61 L. Ed. 2d 560 (1979), *reh'g denied*, 444 U.S. 890, 100

S. Ct. 195, 62 L. Ed. 2d 126 (Oct. 1, 1979), the Supreme Court held

that,

"in a challenge to a state criminal conviction brought under
28 U.S.C. § 2254 — if the settled procedural prerequisites for
such a claim have otherwise been satisfied — the applicant is
entitled to habeas corpus relief if it is found that upon the
record evidence adduced at the trial no rational trier of fact
could have found proof of guilt beyond a reasonable doubt."

This standard requires a federal district court to examine the

evidence in the light most favorable to the State. Id. at 326, 99

S. Ct. at 2793 ("a federal habeas corpus court faced with a record

of historical facts that supports conflicting inferences must

presume — even if it does not affirmatively appear in the record —

that the trier of fact resolved any such conflicts in favor of the

prosecution, and must defer to that resolution"). The State is not

required "to rule out every hypothesis except that of guilt beyond a reasonable doubt[.]" Id. at 326, 99 S. Ct. at 2792.

"[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court may do so only if the state court decision was objectively unreasonable." Cavazos v. Smith, ___ U.S. ___, 132 S. Ct. 2, 4, 181 L. Ed. 2d 311 (2011) (per curiam) (internal quotation marks & citation omitted), reh'g denied, ___ U.S. ___, 132 S. Ct. 1077, 181 L. Ed. 2d 794 (Jan. 9, 2012).

Petitioner points out that the Tennessee Court of Criminal Appeals upheld the sufficiency of the evidence without identifying Jackson v. Virginia. (D.E. 1-1 at 9.) Although the Tennessee appellate court did not cite Jackson, this is "a run-of-the-mill state-court decision applying the correct legal rule from [Jackson] to the facts of a prisoner's case" and, therefore, it does "not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams v. Taylor, 529 U.S. at 406, 120 S. Ct. at 1520.[7] The Tennessee Court of Criminal Appeals stated the correct legal standard, see supra pp. 12-14, and then applied that standard to the evidence

---

[7]     The Supreme Court has emphasized the narrow scope of the "contrary to" clause, explaining that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Id. at 406, 120 S. Ct. at 1520; see also id. at 407, 120 S. Ct. at 1520 ("If a federal habeas court can, under the 'contrary to' clause, issue the writ whenever it concludes that the state court's application of clearly established federal law was incorrect, the 'unreasonable application' test becomes a nullity.").

presented at trial, particularly the testimony of the State's witnesses and the DNA evidence, *see supra* pp. 13-14. Hammond has failed to satisfy his burden of demonstrating that the decision of that court was an unreasonable application of <u>Jackson v. Virginia</u>.

Petitioner also contends that the state appellate opinion was based on an unreasonable determination of the facts because "one simply cannot force or coerce an unconscious victim . . . to do anything against their will period." (D.E. 16 at 8.) He relies on the evidence presented at trial that the victim was passed out, drunk, or in a heavy sleep due to her voluntary intoxication. (D.E. 1-1 at 5-6.) He contends that "there is a specific need for some type of 'communication' in order to effectuate a crime by 'coercion.'" (D.E. 1-1 at 6.)

The evidence presented at trial revealed the victim had been drinking and fell asleep or passed out. (D.E. 10-2 at 14-15.) She was fully dressed, laying on her stomach with her arms tucked beneath her. (D.E. 10-2 at 15, 20.) The victim awoke to find her pants and underwear pulled down to her ankles and Hammond withdrawing his penis and getting off of her body. (D.E. 10-2 at 15-16, 20.) The victim testified that she was upset and ran out of her sister's apartment. (D.E. 10-2 at 22.) The victim's sister testified that the victim was visibly upset, crying and screaming, when the victim left the apartment. (D.E. 10-2 at 46, 51.)

Hammond's argument that an unconscious or sleeping victim cannot be forced to do something against her will is disingenuous. That the victim testified that she was asleep when Petitioner began his sexual assault satisfies the element that he had reason to know that the victim did not consent to intercourse. "'Force' means compulsion by the use of physical power or violence and shall be broadly construed to accomplish the purposes of this title." *See* Tenn. Code Ann. § 39-11-106(12). The victim's testimony establishes that Hammond removed her clothes, climbed on top of her, and pushed his penis inside her. The jury credited that testimony and determined that Defendant's unlawful action was forced or coerced. "[Q]uestions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact." State v. Hammond, 2008 WL 465278, at *2.

The evidence at trial was more than sufficient to sustain Hammond's conviction for rape. He has not satisfied his burden of demonstrating that the decision of the Tennessee Court of Criminal Appeals was an unreasonable factual determination. The first issue is without merit and is DISMISSED.

Issue Two

Ineffective Assistance

17

Petitioner contends that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment. A claim that ineffective assistance of counsel has deprived a defendant of that right is controlled by the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), *reh'g denied*, 467 U.S. 1267, 104 S. Ct. 3562, 82 L. Ed. 2d 864 (June 25, 1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688, 104 S. Ct. at 2064. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" Harrington v. Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011)(internal citations omitted)(quoting Strickland, 466 U.S. at 687, 689, 104 S. Ct. at 2052, 2066).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.[8] "A reasonable

---

[8] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. If a reviewing court finds a
(continued...)

probability is a probability sufficient to undermine confidence in the outcome." Id. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Richter, ___ U.S. at ___, 131 S. Ct. at 787-88 (internal citations omitted) (quoting Strickland, 466 U.S. at 687, 693, 104 S. Ct. at 2064, 2067); see also id. at ___, 131 S. Ct. at 791-92 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); Wong v. Belmontes, 558 U.S. 15, 27, 130 S. Ct. 383, 390-91, 175 L. Ed. 2d 328 (2009) (per curiam) ("But Strickland does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different."), reh'g denied, 558 U.S. 1138, 130 S. Ct. 1122, 175 L. Ed. 2d 931 (Jan. 11, 2010).

---

[8]    (...continued)
lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient.  Id.

"Surmounting <u>Strickland</u>'s high bar is never an easy task."

<u>Padilla v. Kentucky</u>, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485, 176

L. Ed. 2d 284 (2010).

> An ineffective-assistance claim can function as a way to
> escape rules of waiver and forfeiture and raise issues
> not presented at trial, and so the <u>Strickland</u> standard
> must be applied with scrupulous care, lest "intrusive
> post-trial inquiry" threaten the integrity of the very
> adversary process the right to counsel is meant to serve.
> <u>Strickland</u>, 466 U.S., at 689-690, 104 S. Ct. 2052. Even
> under *de novo* review, the standard for judging counsel's
> representation is a most deferential one. Unlike a later
> reviewing court, the attorney observed the relevant
> proceedings, knew of materials outside the record, and
> interacted with the client, with opposing counsel, and
> with the judge. It is "all too tempting" to "second-
> guess counsel's assistance after conviction or adverse
> sentence." <u>Id.</u>, at 689, 104 S. Ct. 2052; *see also* <u>Bell
> v. Cone</u>, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed.
> 2d 914 (2002); <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 372,
> 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question
> is whether an attorney's representation amounted to
> incompetence under "prevailing professional norms," not
> whether it deviated from best practices or most common
> custom. <u>Strickland</u>, 466 U.S., at 690, 104 S. Ct. 2052.

<u>Richter</u>, ___ U.S. at ___, 131 S. Ct. at 788.

When an ineffective-assistance claim is reviewed under §

2254(d), the review is "doubly deferential." <u>Knowles v. Mirzayance</u>,

556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L. Ed. 2d 251 (2009).

> Establishing that a state court's application of
> <u>Strickland</u> was unreasonable under § 2254(d) is all the
> more difficult. The standards created by <u>Strickland</u> and
> § 2254(d) are both "highly deferential," <u>id.</u>, at 689, 104
> S. Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n. 7,
> 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the
> two apply in tandem, review is "doubly" so, <u>Knowles</u>, 556
> U.S., at ----, 129 S. Ct. at 1420. The <u>Strickland</u>
> standard is a general one, so the range of reasonable
> applications is substantial. 556 U.S., at ----, 129 S.
> Ct. at 1420. Federal habeas courts must guard against

the danger of equating unreasonableness under <u>Strickland</u>
with unreasonableness under § 2254(d). When § 2254(d)
applies, the question is not whether counsel's actions
were reasonable. The question is whether there is any
reasonable argument that counsel satisfied <u>Strickland</u>'s
deferential standard.

<u>Richter</u>, ___ U.S. at ___, 131 S. Ct. at 788.

The Court of Criminal Appeals summarized the evidence presented

at the post-conviction hearing as follows:

> At the post-conviction hearing, the petitioner
> testified that trial counsel was appointed to represent
> him in 2006. The petitioner stated that he met with
> trial counsel about four times and that they discussed
> the State's proof and possible defenses. The petitioner
> said that everyone was drinking alcohol at the party and
> that the victim "invited sex" with the petitioner and
> other men. He told trial counsel that he thought the
> victim had sex with other men that night.

> The petitioner acknowledged that at trial, an expert
> witness for the State testified that the petitioner's DNA
> was found on the victim's underwear. The petitioner said
> that he did not ask trial counsel to hire an expert to
> conduct further DNA tests. However, he stated that he
> thought an expert could have told trial counsel that men
> other than the petitioner had sex with the victim. The
> petitioner said that the expert found a "partial
> protocol" on the victim's underwear and that the
> petitioner believed that "mean[t] it's more than one
> person's semen." The petitioner acknowledged that trial
> counsel cross-examined Ted Ingram, who had been at the
> party, and that Ingram denied having sexual contact with
> the victim.

> The petitioner said that he was charged with rape by
> force or coercion but that he did not believe the State
> proved force or coercion. The petitioner said the proof
> established that the victim was asleep and that a person
> who is asleep cannot be forced or coerced.

> The petitioner stated that at the conclusion of the
> State's proof, trial counsel made a motion for a judgment
> of acquittal. The petitioner maintained that trial
> counsel erred by "failing to stand" on the motion. The

petitioner acknowledged that the trial court denied the motion and that he had wanted his brother and sister to testify. The petitioner said that he chose not to testify at trial.

Trial counsel testified that he and the petitioner met approximately three or four times and that they discussed the evidence and defenses. Trial counsel said that the petitioner and the victim were at a party where everyone was drinking alcohol; specifically, the victim drank six or seven shots of tequila. Trial counsel said he established during the cross-examination of the DNA expert that the semen found on the victim's underwear could have been from preejaculatory fluid. Trial counsel said that evidence supported the defense theory that the petitioner and the victim had sexual contact after the victim propositioned the petitioner but that no penetration occurred because the petitioner learned that the victim was menstruating. Trial counsel said that he believed the victim was embarrassed because she had a boyfriend and that she "came up with the story that he had raped her to try to cover what she had done." Trial counsel said that he thought the petitioner had a "pretty good case for the jury."

Trial counsel said that the State conducted DNA testing. Although no DNA was found on the victim, the petitioner's DNA was found on the victim's underwear. Trial counsel explained that the DNA expert found twelve out of fourteen "markers" in the DNA from the victim's underwear. Trial counsel explained that this "partial profile" was sufficient to identify the petitioner as the contributor. The petitioner told counsel that he thought more than one man had sex with the victim that night. Trial counsel opined that proof of other men having sex with the victim that night would have definitely influenced the jury. However, there was no evidence of another person's DNA on the victim or her clothing. Additionally, the other men around the victim that night denied having sexual contact with her. Therefore, trial counsel opined that a defense DNA expert would not have made a difference. Trial counsel said that the only thing he might have done differently was to have the petitioner testify at trial.

Trial counsel stated that he made motions for a judgment of acquittal at the close of the State's case-in-chief and the close of all the proof. The trial

court denied the motions.  He and the petitioner did not
discuss whether to put on defense proof after the denial
of the first motion because they had always anticipated
calling the petitioner's sister and brother to refute the
victim's testimony.  Trial counsel said that he thought
the petitioner's siblings were "good witnesses."  Trial
counsel stated that the sister's testimony was beneficial
because she testified that the victim said she was going
to have sex with someone on the night in question.
However, he noted that the victim denied making that
statement.  Trial counsel said that he believed they
proved that the petitioner and the victim had consensual
sexual contact but that they did not have intercourse
because the petitioner discovered the victim was
menstruating.

Hammond v. State 2012 WL 376490, at *2-3.

The Court of Criminal Appeals identified the standard for
reviewing claims of ineffective assistance, stating:

When a petitioner seeks post-conviction relief on
the basis of ineffective assistance of counsel, "the
petitioner bears the burden of proving both that
counsel's performance was deficient and that the
deficiency prejudiced the defense." Goad v. State, 938
S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v.
Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.
2d 674 (1984)).  To establish deficient performance, the
petitioner must show that counsel's performance was below
"the range of competence demanded of attorneys in
criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936
(Tenn. 1975).  To establish prejudice, the petitioner
must show that "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of
the proceeding would have been different.  A reasonable
probability is a probability sufficient to undermine
confidence in the outcome." Strickland, 466 U.S. at 694.
Moreover,

[b]ecause a petitioner must establish both prongs of
the test, a failure to prove either deficiency or
prejudice provides a sufficient basis to deny relief
on the ineffective assistance claim.  Indeed, a
court need not address the components in any
particular order or even address both if the

> [petitioner] makes an insufficient showing of one
> component.
>
> Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at
> 697).

Hammond v. State 2012 WL 376490, at *4.

## Issue 2A

### Counsel's Failure to Challenge the Sufficiency
### of the State's Proof of Force or Coercion

Hammond contends that counsel's performance was deficient because he did not challenge the prosecution's failure to meet the burden of proof with respect to the elements of force and coercion. (D.E. 1-1 at 13.) The inmate repeats that argument set forth in Issue One that "you cannot 'force' an unconscious person to have sexual intercourse if they are unconscious." (Id. at 12.) The State has incorrectly asserted that this issue is barred by procedural default. (D.E. 9 at 12-13.)

Admittedly, Petitioner's post-conviction appellate brief was unclear with regard to the issues raised. (D.E. 10-17.) The brief's table of contents characterizes the argument as "WHETHER THE TRIAL COURT PROPERLY DENIED THE PETITION FOR POST CONVICTION RELIEF CONCLUDING THAT PETITIONER RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL THROUGHOUT HIS REPRESENTATION." (D.E. 10-17 at 3.) The statement of the issues presented for review, however, indicates "Whether there is sufficient evidence to support appellant's conviction for

[r]ape." (<u>Id.</u> at 5.) Allegations included in the statement of
facts are:

> Mr. Hammond testified that Ms. Givens did not have the
> state of mind to be forced into rape. . . . Mr. Hammond
> testified the outcome would be different because of a lot
> of things stating he said that I don't believe the jury
> understood at the time of my sentencing as well as at the
> trial, nobody never at any time said anything about force
> or coercion. It was all about rape. Nothing was ever
> said about force or coercion. That's why what I was
> tried for on the Indictment but they were trying me for
> rape. They never said anything about force and/or
> coercion.

(<u>Id.</u> at 8-9.)

The Tennessee Court of Criminal Appeals acknowledged that
Petitioner alleged that his trial counsel was ineffective by not
raising the lack of proof that Petitioner committed the rape by
force or coercion as alleged in the indictment. <u>Hammond v. State</u>,
2012 WL 376490, at *2. The Court of Criminal Appeals succinctly
dismissed the claim, stating:

> Moreover, we note that on direct appeal this court
> examined the sufficiency of the evidence and affirmed the
> petitioner's rape conviction. <u>Hammond</u>, No. W2007-00219-
> CCA-R3-CD.

<u>Hammond</u>, 2012 WL 376490, at *5.

The record demonstrates that counsel made a motion for judgment
of acquittal at the close of the State's proof, stating "I just feel
that there is not enough evidence to go to the jury on the charge
of rape. I feel that from Ms. Givens' testimony there is just not
enough for a reasonable jury to find Mr. Hammond guilty." (D.E. 10-

2 at 87.) After the lunch recess, the trial court denied that motion, stating:

> The Court has gone back and I've looked at the proof very carefully and I've considered the charge of rape and at this time the Court is going to deny the Motion for Judgment of Acquittal. Now, taking the proof in the light most favorable to the State at this time and according to the proof, Ms. Givens has stated that on this particular night, I believe March the 30th of 2002, that she was asleep or passed out there in the bedroom and she indicated that she awoke and found that the defendant was on top of her and that according to her testimony, "I felt him coming out of me. I woke up." And she testified that she had been sexually penetrated; that this was done without her consent and against her will. She did indicate[] according to her testimony that after the act had taken place that she turned the light on and identified the defendant, David Hammond, as being the person who had sexually penetrated her against her will and without her consent. Based upon that, the Court is going to deny the Motion for Judgment of Acquittal.

(D.E. 10-2 at 96.) Counsel raised the sufficiency of the evidence on direct appeal, presenting a viable argument by challenging the credibility of the witnesses. State v. Hammond, 2008 WL 465278, at *2-3.

The Tennessee Court of Criminal Appeals cited and applied the Supreme Court's decision in Strickland v. Washington. The Tennessee state court determined that counsel's performance was not deficient or prejudicial. Hammond, 2012 WL 376490, at *5. Hammond's argument is without merit. Counsel did not provide ineffective assistance by failing to make frivolous arguments at trial or on appeal. The decision of the Tennessee Court of Criminal Appeals was not an unreasonable determination of the facts in light of the evidence

presented in the State court proceedings. 28 U.S.C. § 2254(d)(2).

A state court's factual findings are entitled to a presumption of
correctness in the absence of clear and convincing evidence to the
contrary. Id., § 2254(e)(1). Issue 2A is DENIED.

Issue 2B

Counsel's Failure to Hire a DNA Analysis Expert

Petitioner faults trial counsel for his failure to seek a
state-funded DNA analysis expert to familiarize counsel with DNA
protocols and assist with cross examination of the State's expert.
(D.E. 1-1 at 18.)  The State responds that Hammond has failed to
demonstrate that the Tennessee Court of Criminal Appeals'
adjudication of this issue was an unreasonable application of
clearly established federal law or that it involved an unreasonable
determination of the facts.  (D.E. 9 at 14.)

The Tennessee appellate court denied relief on this issue,
stating:

> Trial counsel testified that there was no proof that the
> DNA of anyone other than the petitioner was found on the
> victim or the victim's clothes.  Trial counsel stated
> that a DNA expert would, therefore, not have made a
> difference.  The petitioner did not provide proof at the
> post-conviction hearing concerning any DNA evidence. . .
> . The post-conviction court found that "[t]here is no
> credible proof to support the claim that [trial counsel]
> was deficient in his representation or performance or
> that his representation or performance prejudiced the
> [petitioner] in any way."  Based upon the record before
> us, we agree with the post-conviction court that
> petitioner has failed to show he is entitled to relief.

Hammond v. State, 2012 WL 376490, at *5.

Hammond's argument is based on his misunderstanding of the testimony of the State's expert. Lawrence James, a forensic scientist in the DNA and forensic biology division of the Memphis Regional Crime Laboratory, testified:

> I obtained a DNA profile from the underwear. It was a partial DNA profile. The method of DNA analysis that I use analyzes 14 areas on the DNA molecule and I obtain a DNA profile from 12 of those 14 because of degraded sample or just the small amount of DNA that was present. So I didn't get a full profile, but the profile that I did obtain from the underwear, it matched the blood standard submitted from David Hammond.

(D.E. 10-2 at 78.)

During the post-conviction hearing, Attorney Colin Morris elicited the following testimony from trial counsel:

Morris:    I'm pretty much going to cut to the chase here and go directly to the DNA allegations. Did you discuss with Mr. Hammond the fact that there may have been other people involved in sexual activity with Ms. Givens?

Counsel:   Yes.

Morris:    All right. Did you know that Mr. James was going to be the expert witness in this case?

Counsel:   Yes.

Morris:    Did you prepare yourself to cross-examine Mr. James about the DNA involved in this case?

Counsel:   The only DNA in the report that they found from the report that I have was from Mr. Hammond at least a partial profile.

Morris:    You think that's what he is trying to say when he says partial protocol?

Counsel:   I think so.

Morris:      What's your understanding of what that means?

Counsel:     That there are I think 13 genetic markers they
             use to try to match DNA to a subject's
             specimen. They didn't have all 13 or however
             many it is to match Mr. Hammond, but they had
             enough where they felt like they could offer
             their opinion that that was Mr. Hammond's DNA.

. . . .

Morris:      His allegation is that you should have asked
             the Court for funding for an expert witness in
             DNA to help in the preparation of your
             defense. Do you agree or disagree with that?

Counsel:     If there was unknown DNA, maybe. From the
             report I had, it said that David Hammond's DNA
             was found on Ms. Givens' underwear. So our
             defense was that while his DNA was there, he
             did not have sexual intercourse with her. He
             did not sexually penetrate her. That's what
             Mr. Hammond had always told me from the very
             beginning that he had never had intercourse
             with Ms. Givens.

Morris:      Do you think it would have been prudent to ask
             the Court for funding for a DNA expert to help
             you defend the case?

Counsel:     I thought based on the fact from what we had
             talked about that there was not any other DNA
             found that I knew of and I didn't see how it
             would have helped.

Morris:      Well, if it was established that there were
             other guys that were involved with sexual
             activity with Ms. Givens, do you think that
             could have influenced the jury?

Counsel:     I think that would have definitely influenced
             the jury if they heard that. I asked Mr.
             Ingram if he had had intercourse with Ms.
             Givens and he said that he did not have
             intercourse with her. I didn't have any
             witnesses to the contrary.

. . . .

| | |
|---|---|
| Morris: | Do you think if the jury were to hear the State's expert and then if you had an expert yourself they could have weighed it out and it could have given them another fact or issue to talk about when analyzing the evidence? |
| Counsel: | I guess it could have. I'm not sure. I guess that's possible. |
| Morris: | If you were able to try the case again, would you request an expert witness to help you defend the case? |
| Counsel: | Based on what Mr. Hammond told me before, I don't know that I would because I wasn't made aware of any other DNA that was found other than his. Normally they will say that there was DNA found that they don't have anybody to compare it to or anything like that. If that was the case, absolutely. I mean, I can't force anyone to submit to a DNA test, but that could help, yes. |

(D.E. 10-14 at 39-47.)

The state court record contains no support for Hammond's contention that a "partial profile" means "more than one person contributed to the mixture."[9] Because no DNA analysis expert was called as a witness during the post-conviction proceedings, the Court is left to guess what specific testimony he might have offered and how it would have affected the outcome of the trial. A defendant's conclusory allegations about the testimony of uncalled witnesses is insufficient to demonstrate prejudice. *See* Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983). Hammond's

---

[9]    Hammond cites State v. Brzezowski, 2007 WL 1610124 (Tenn. Crim. App. June 1, 2007), as support for his allegation. He refers to James' testimony in that case that "a partial profile means that more than one person contributed to a mixture." Id. at *4. The opinion does not quote James' actual testimony. The statement is included in the summary of testimony by the Court of Criminal Appeals. This Court has no way to determine if the summary is accurate.

conclusory allegations are not sufficient to demonstrate either deficient performance or an unreasonable determination of the facts in light of the evidence presented at the state-court hearing, as required by 28 U.S.C. § 2254(d)(2).

The Tennessee Court of Criminal Appeals cited and applied the Supreme Court's decision in <u>Strickland v. Washington</u>. The Tennessee appellate court held that Hammond failed to establish prejudice or deficient performance. Based on this Court's review of the trial transcript (D.E. 10-2) and transcript of testimony during the post-conviction hearing (D.E. 10-14), the decision of the Tennessee Court of Criminal Appeals did not "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Petitioner disagrees with the decision, however, his unfounded assertions are not sufficient to demonstrate prejudice, deficient performance, or an unreasonable determination of the facts in light of the evidence presented at the state-court hearing, as required by 28 U.S.C. § 2254(d)(2). A state court's factual findings are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. <u>Id.</u>, § 2254(e)(1). The Court cannot conclude that the state court's determination was incorrect and DENIES this issue.

<u>Issue 2C</u>

<u>Counsel's Failure to Stand on his Motion for Judgment of Acquittal</u>

Hammond claims that when counsel failed to "stand on his motion for judgment of acquittal" and "continued to participate in the trial by presenting defense witnesses after the motion was made he 'waived' the issue on appeal." (D.E. 1-1 at 24.) The State responds that the Court of Criminal Appeals correctly used and applied the *Strickland* standard and the decision was not based on an unreasonable determination of the facts. (D.E. 9 at 20-21.)

In denying relief on this issue the Court of Criminal Appeals stated:

> Regarding the decision to proceed with defense witnesses, the post-conviction court noted that the presentation of defense witnesses "supported the [petitioner's] defense" that he was at the party but that he did not sexually penetrate the victim.

Hammond v. State, 2012 WL 376490, at *5.

During the post-conviction hearing, trial counsel responded to this issue as follows:

Morris:   All right.  You not standing on your [ ] motion after you made the Motion for Judgment of Acquittal.  Do you understand what he's saying about that?

Counsel:   I think I do.  That I should have I guess not presented any other witnesses and just argued that the State had not met its burden.  That's what I took.

Morris:   Did ya'll discuss that after you made the motion?

Counsel:   I don't believe so because I thought we had always planned to call the two witnesses to refute what the alleged victim said.

```
Morris:    Did you feel as though you had done a pretty
           good job refuting what the alleged victim said
           and/or the other witnesses?

Counsel:   Well enough to argue to the jury.  I think
           credibly that he was not guilty of rape.
```

(D.E. 10-14 at 45.)

Trial counsel made a motion for judgment of acquittal. (D.E. 10-2 at 87.) The trial court denied the motion. (D.E. 10-2 at 96.) Counsel then proceeded to put on a defense by calling witnesses to refute the testimony of the State's witnesses. (D.E. 10-2 at 99-119.) He raised the sufficiency of the evidence on direct appeal. <u>State v. Hammond</u>, 2008 WL 465278, at *2-3. Hammond's assertion that the outcome of his appeal would have been different without the inclusion of the testimony of defense witnesses is specious. (D.E. 10-14 at 25.) Counsel did not provide ineffective assistance. Petitioner has not presented any facts rebutting the presumption that the state courts' factual findings were correct.

The decision of the Tennessee Court of Criminal Appeals was not an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. § 2254(d)(2). A state court's factual findings are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. <u>Id.</u>, § 2254(e)(1). The Court cannot conclude that the state courts' findings were incorrect and DENIES this issue. Because the issues raised by Hammond are without

merit, the Petition is DISMISSED WITH PREJUDICE. Judgment shall be entered for Respondent.

## V.  APPEAL ISSUES

There is no absolute entitlement to appeal a district court's denial of a § 2254 petition. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003); <u>Bradley v. Birkett</u>, 156 F. App'x 771, 772 (6th Cir. 2005), *reh'g en banc denied* (Jan. 10, 2006). The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Governing Section 2254 Cases in the United States District Courts. A petitioner may not take an appeal unless a circuit or district judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Cockrell</u>, 537 U.S. at 336, 123 S. Ct. at 1039; *see also* <u>Henley v. Bell</u>, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same), *cert. denied*, 555 U.S. 1160, 129 S. Ct. 1057, 173 L. Ed. 2d

34

482 (2009).  A COA does not require a showing that the appeal will succeed, <u>Cockrell</u>, 537 U.S. at 337, 123 S. Ct. at 1039; <u>Caldwell v. Lewis</u>, 414 F. App'x 809, 814-15 (6th Cir. 2011), however, courts should not issue a COA as a matter of course.  <u>Bradley</u>, 156 F. App'x at 773.

In this case, there can be no question that the claims in this petition are without merit.  Because any appeal by Petitioner on the issues raised in this petition does not deserve attention, the Court DENIES a certificate of appealability.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a)(4)-(5).  In this case, for the same reasons it denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and therefore, leave to appeal *in forma pauperis* is DENIED.[10]

---

[10]    If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of the
(continued...)

IT IS SO ORDERED this 20th day of March 2014.

s/ J. DANIEL BREEN
J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[10]     (...continued)
date of entry of this order.  *See* Fed. R. App. P. 24(a)(5).